IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH WIENS,

        Plaintiff,

v.                                       Case No.  23-cv-1002-JWB

FARM BUREAU PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on several post-trial motions; namely, Plaintiff's motion for attorneys' fees and bill of cost (Doc. 73, 82), along with Defendant's motion to alter judgment. (Doc. 76.)  The motions are fully briefed and ripe for decision.  (Doc. 74, 75, 77, 78, 79, 82, 83, 89.)  The motions are granted in part and denied in part for the reasons stated herein.

I.      **Facts**

Kenneth Wiens filed a lawsuit against his auto insurer, Farm Bureau Property and Casualty Insurance Company, after he sustained injuries in an auto accident caused by an underinsured motorist.  (Doc. 5.)  Although the tortfeasor motorist settled with Plaintiff for $30,000.00, which was the limit under the tortfeasor's auto insurance policy, Plaintiff brought the present claim against Defendant under the underinsured motorist ("UIM") coverage of his own commercial auto insurance policy.  (Doc. 34.)  This policy provided coverage up to $1,000,000.  (*Id*.)  Plaintiff also received personal injury protection benefits from Defendant under his auto insurance policy of $9,500.00, which was the policy maximum.  (Doc. 77-2.)

1

After discovery, Plaintiff alleged a total damage amount of $1,203,025.29.  (Doc. 34 at 6.)  However, after the court granted Defendant's summary judgment motion on future medical expenses (Doc. 43), Plaintiff modified his claim to ask for $500,000 each for past and future non-economic damages.  (Doc. 47.)  Before trial, Defendant tendered an offer of judgment for the sum of $100,000.00 with costs accrued.  (Doc. 49.)  This offer was in addition to the $30,000 Plaintiff had received in settlement with the underinsured motorist and included Defendant's waiver of its right of subrogation for the $9,500 personal injury protection ("PIP") benefits previously paid.  (*Id.*)  This would have brought the total recovery by the Plaintiff from all sources to $139,500.00 plus costs.  Nevertheless, Plaintiff rejected this offer, choosing instead to take his claim for $1,000,000 to trial.

At trial, the jury awarded Plaintiff a total of $150,000, with $125,000 awarded for past non-economic loss and $25,000 awarded for future non-economic loss.  (Doc. 71-1.)  The court entered judgment on the verdict.  (Doc. 72.)  Plaintiff now moves for fees and costs, requesting $78,898.75 and $2,454,76 respectively.  (Doc. 73, 75.)  Defendant also filed a motion to amend judgment to reduce the jury award by $39,500, to account for the payments previously made to Plaintiff for PIP benefits and the settlement with the tortfeasor driver.  (Doc. 76.)

## II.    Standard

Costs other than attorneys' fees should be awarded to a prevailing party unless a federal statute, the federal rules, or a court order provides otherwise.  Fed. R. Civ. P. 54(d)(1).  A claim for attorneys' fees must generally be by motion and specify the grounds entitling the movant to the award and state the amount of fees sought or a reasonable estimate.  *See id.* at (d)(2).

### III.    Analysis

The motions are all contested, and so the court analyzes Defendant Farm Bureau's motion to alter judgment first.

### A. Farm Bureau's Motion to Alter Judgment

Defendant moves to decrease the judgment on the verdict to reflect the $30,000 settlement that Plaintiff received from the underinsured tortfeasor and to also decrease the judgment to reflect the $9,500 in PIP benefits that Defendant paid to Plaintiff to cover medical expenses from the accident. In support, Defendant contends that K.S.A. § 40-284 prevents Plaintiff from making duplicative recovery on his judgment. (Doc. 77.) On the other hand, Plaintiff contends that the statutory language of K.S.A. § 40-284 does not permit an insurer an offset or credit for previous payments or settlements. He argues instead that the settlement merely decreases the potential total UIM recovery instead of acting as a credit towards the specific damage recovery, and the damage award by the jury in this case did not explicitly include medical expenses which could be construed as duplicative PIP recovery. (Doc. 83.)

Looking at the matter of the underinsured tortfeasor settlement first, it is undisputed that Plaintiff received a $30,000 settlement from the underinsured driver for a release of liability regarding the accident. Additionally, Defendant waived its rights of substitution and subrogation under K.S.A. § 40-284(f), which meant that Plaintiff received the payment from the underinsured tortfeasor directly. (Doc. 34.) A fundamental issue here is whether the $30,000 payment Plaintiff received is credited towards the damages suffered by Plaintiff or merely serves to decrease the total amount of money available to claim under Plaintiff's UIM coverage.

To determine the correct interpretation of K.S.A. § 40-284, we are bound to look to the guidance of the Kansas Supreme Court. Both parties in their briefs cite to *O'Donoghue v. Farm*

*Bureau Mut. Ins. Co.*, 275 Kan. 430, 66 P.3d 822 (2003).  This case involved an injured individual who received $25,000 as a pro rata settlement from a tortfeasor and then subsequently requested $75,000 from her insurer to cover the remainder of her damages up to her $100,000 UIM policy limit. The insurance company claimed that it only had to pay $50,000 under the UIM policy, since the original tortfeasor's insurance had a listed policy limit of $50,000 per person (and $100,000 total) per occurrence.  *Id*. at 432.  In ruling for the injured individual, the court held that an insurance company was required to pay the difference between an insured's pro rata share of a vehicular injury accident settlement and the policy limits of his underinsured motorist policy.  *Id*. at 440.

Plaintiff urges the court to view the *O'Donoghue* rule as requiring settlements to be taken off the total recovery available, which would reduce the total available recovery under the UIM policy to $970,000 and leave the $150,000 judgment intact.  A simple application of *O'Donoghue* is not exactly applicable in this case, since the $150,000 in damages awarded by the jury is well under the $1 million underinsured motorist policy limit. Hence, the two cases the court in *O'Donoghue* used for its rationale are instructive.  The court relied on, and explicitly adopted, the reasoning from *Jones v. Automobile Club Inter–Insurance Exchange*, 26 Kan. App. 2d 206, 981 P.2d 767, rev. denied 268 Kan. 847 (1999), and *Cashman v. Cherry*, 270 Kan. 295, 13 P.3d 1265 (2000).  Both of these cases had claimants who received a settlement from underinsured tortfeasors but whose total damages were under their UIM policy limits.  In both these cases, the courts held that the injured party's claims against their insurance companies were to be the difference between whatever they received as a settlement with the tortfeasor and their total damage determination.  *Jones*, 26 Kan. App. 2d at 209 (holding that the UIM insurance company was responsible for the difference between Plaintiff's pro rata share of a $43,000 settlement and $20,682.15 in total

4

damages); *Cherry*, 270 Kan. at 302 (holding that the UIM insurance company was responsible for the difference between Plaintiff's pro rata share of a $100,000 settlement and her total damages of $40,539.91). These cases make it clear that the $30,000 settlement Plaintiff has already received in this case is viewed as part of the total damages award rather than subtracting the total damages available. Therefore, Defendant's motion to amend judgment to $120,000 is granted to reflect the difference between the $30,000 settlement that Plaintiff has already received and the $150,000 jury verdict.

Moving to the issue of the PIP payments, the Kansas Supreme Court has instructed that K.S.A. § 40-284 is a remedial statute and that its provisions "should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries." *Rich v. Farm Bureau Mut. Ins. Co.*, 250 Kan. 209, 215, 824 P.2d 955, 959 (1992); *see also Simpson v. Farmers Ins. Co.*, 225 Kan. 508, 512, 592 P.2d 445, 448 (1979). In *Rich*, the Kansas Supreme Court held that K.S.A. § 40–284(e)(6) only allowed insurance providers to exclude or limit their UIM coverage to the extent that duplicative personal injury protection benefits apply. *Rich*, 250 Kan. at 215–16. The Kansas Supreme Court went on to explain *Rich* a year later in *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 680, 847 P.2d 1292, 1296 (1993). In this later decision, the court explained that the *Rich* holding means that "40–284(e)(6) . . . permit[s] an insured to recover underinsured motorist benefits which are not duplicative of PIP benefits." *Id*. Thus, if a defendant wants to exclude UIM payments under K.S.A. § 40–284(e)(6), he must clearly show that damages the plaintiff claims under UIM coverage were damages which were previously covered by PIP benefits. *Id*.

In this matter, Defendant previously made $9,500 in PIP payments to Plaintiff for injuries resulting from the accident. However, the jury verdict did not reflect any specific medical

5

damages; rather, it merely awarded $125,000 for past non-economic damages and $25,000 for future non-economic damages. (Doc. 71-1.) Defendant is correct that Plaintiff initially claimed medical damages in his complaint and even up to trial. (Doc. 5, 34, 39.) However, at the in limine conference held before trial on August 1, 2024, Plaintiff represented to the court that he would no longer be pursing medical damages, instead only pursuing non-economic damages. This means that the jury only considered non-economic damages, and the verdict of $150,000 did not include medical damages to which Defendant's PIP payments would have applied. Given the instructions on K.S.A. § 40–284(e)(6) from the Kansas Supreme Court, the court is bound to liberally construe the damages in this case and hold that the damages awarded by the jury are not duplicative of PIP payments previously tendered for past medical injury. Accordingly, the previous PIP payments are not credited towards the judgment in this case. Defendant's motion is denied on this second issue.

### B. Kenneth Wiens Motion for Attorneys' Fees and Bill of Costs

#### 1. Costs

Plaintiff initially filed a Bill of Costs, along with a supporting brief in compliance with Local Rule 54.1, requesting $2,881.76. (Doc. 74, 75.) After Defendant objected to the inclusion of a $2,155 bill from Flint Hills Neuropsychology, Plaintiff acknowledged that the Defense objection was correct and filed a motion to amend his bill of costs to reflect only the statutory per diem and milage costs allowed under 28 U.S.C. § 1821 for Dr. Durrett's services at trial. (Doc. 82.) In his proposed amended bill of costs, Plaintiff now requests $940.96. The Court finds that it is appropriate to grant Plaintiff's motion to amend his bill of costs and subsequently award these costs.

### 2. Attorneys' Fees

According to K.S.A. § 40-908, a court entering judgment for a Plaintiff against an insurance company that has "any policy given to insure any property in this state . . . shall allow the plaintiff a reasonable sum as an attorney's fee." Although the statute clearly references only property, the Kansas Supreme Court has held that this statute also entitles plaintiffs to fees in insurance cases involving personal injury. *See Bussman v. Safeco Ins. Co. of Am.*, 298 Kan. 700, 723-29 (2014). Thus, Plaintiff is entitled to fees, but this court must determine what amount is reasonable under the circumstances. Reasonableness in the context of hours billed requires consideration of whether the hours were necessary under the circumstances. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). "The party seeking attorney fees bears the burden of proving that its request is reasonable and must 'submit evidence supporting the hours worked.'" *Sieber v. Berryhill*, No. 17-2630, 2018 WL 3389888 at *2 (D. Kan. July 12, 2018) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).

In their motion for fees, Plaintiff's attorneys ask for $78,898.75.[1] In support of this number, Plaintiff asks for hourly rates of $425 for partners, $200 for associates, and $90 for paralegals. Additionally, Plaintiff's attorneys provide timecards via affidavits for 94 hours of work from partner Micheal Wyatt, 89.15 hours of work from partner Scott Mann, and 16.5 hours of work from paralegal Carrie Barr. In setting the hourly rate, "the court should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for

---

[1] The exact amount Plaintiff's attorneys claim as fees is unclear. A review of the relevant filings shows that the hours submitted in the attorneys' affidavits would result in a total of $79,323.75 at rates requested in the motion, which is $425 more than the amount requested by Plaintiff's attorneys in their motion. Additionally, after post-trial briefing, Plaintiff's attorneys have filed amended affidavits in which they attempt to modify their hours and claim that they have now provided $88,533.75 worth of legal services. (Doc. 86, 87, 88.) However, they failed to file an amended motion for fees. Hence, the court will treat the requested amount as $78,898.75, since that is the dollar amount explicitly requested in the motion for fees.

7

comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).  A reasonable hourly rate comports with rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984).  The rates and hours claimed in this case are not excessive, and as such are generally reasonable for a case such as this.

While the rate and hours requested here may be appropriate, this court is also authorized to consider any less-than-optimal results of litigation in determining the reasonableness of fees. *Hensley v. Eckerhart*, 461 U.S. 424, 435–36 (1983); *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) ("There is no doubt that a district court may reduce a lodestar calculation on the grounds that a prevailing party has achieved only partial success").  As the United States Supreme Court has stated, "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified . . . .  If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id*.  In situations of limited success, a district court must make a qualitative assessment as to whether the limited success should affect a reduction in the lodestar calculation. *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995).  There is no precise formula that a court must follow; rather, a court has discretion to make an equitable judgment. *Hensley*, 461 U.S. at 436.

In turning to the results in this present case, Plaintiff initially brought a claim for $4,689,697.49 in damages (Doc. 79-1), which was reduced to $1,203,025.29 after discovery (Doc.

34), and further reduced to $1 million at trial.  After trial, the jury awarded the Plaintiff $150,000, which is 15% of what he sought at trial and 12.5% what he sought after discovery.  Moreover, a district court is authorized to consider the difference between an offer of judgment and the actual recovery as a factor in determining reasonableness of fees.  *See, e.g.*, *Sands v. Runyon*, 28 F.3d 1323, 1334 (2d Cir. 1994); *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 608 (7th Cir. 1982).  In this matter, Defendant tendered an offer of judgment of $100,000 to Plaintiff before trial, which would have given Plaintiff a total recovery of $130,000 (including the underinsured tortfeasor settlement) plus waiver of PIP subrogation and costs.  (Doc. 49.)  Plaintiff rejected this offer, opting to go to trial instead and obtaining the results described above.  As a result of this choice, the net difference in jury award versus the offer of judgment was only $20,000 after a three-day trial (a mere 2% increase considering the $1 million damage claim).  It is the opinion of the court that the result obtained by Plaintiff in this case is hard to construe as anything other than limited success.

Given the above, the court finds that a downward adjustment in the lodestar calculation is warranted.  In determining such an adjustment, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37.  The court finds that a downward adjustment in attorney's fees to $50,000.00 is warranted and awards such fees to Plaintiff.

## IV.    Conclusion

Plaintiff's motion to amend his bill of costs (Doc 82) is GRANTED. The Court awards Kenneth Wiens $940.96 in costs.  Additionally, Defendant's motion to alter or amend judgment (Doc. 76) is GRANTED IN PART and DENIED IN PART and the judgment is reduced to $120,000, since Defendant is entitled to credit on the judgment award for the $30,000 settlement

that Plaintiff previously received from the underinsured tortfeasor.  Finally, Plaintiff's motion for attorney's fees (Doc. 73) is GRANTED in the amount of $50,000.00.

Defendant is directed to tender payment to Kenneth Wiens two weeks from the date of this order and shall file a notice of compliance upon making the payment.

IT IS SO ORDERED.  Dated this 29th day of January, 2025.

＿＿s/ John W. Broomes＿＿＿＿＿＿＿
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE